Argued and submitted February 22, reversed and remanded November 15, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# DOUGLAS LEROY PITT,
*Appellant.*

011381; A120428

147 P3d 940

Mary-Shannon Storey, Deputy Public Defender, argued the cause for appellant. On the opening brief were Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Monica L. Finch, Deputy Public Defender, Office of Public Defense Services. Monica L. Finch, Deputy Public Defender, filed the supplemental brief.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.*

* Ortega, J., *vice* Ceniceros, S. J.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for two counts of sexual abuse in the first degree, ORS 163.427, and two counts of unlawful sexual penetration in the first degree, ORS 163.411. He advances several assignments of error related to the trial court's evidentiary rulings and to the imposition of his sentence. Among other things, defendant argues that, under *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), the trial court erred in allowing into evidence videotapes and witness testimony containing the hearsay statements of two child victims whom defendant did not have the opportunity to cross-examine. Although he did not make that argument to the trial court, he contends that the admission of those statements is error apparent on the face of the record. We agree with defendant that the admission of that evidence was plainly erroneous under *Crawford*, and, given the gravity of the error, we exercise our discretion to correct it. Without reaching defendant's other assignments of error, therefore, we reverse.

The relevant facts are not in dispute. Defendant was charged with sexually abusing a four-year-old girl, A. Defendant was the boyfriend of A's mother, Snider. In the summer of 2001, defendant began living with Snider and A in Eugene. Later that year, the three moved to Clatsop County. Snider then noticed changes in her daughter's behavior; A was resisting being alone with defendant and was wetting the bed. She developed a rash and complained about feeling sick. In December 2001, A told her mother that defendant "touches me" and pointed to her genital area. Snider took the matter to the police, who made arrangements for A to be seen at a child abuse assessment center called the Lighthouse.

A was seen at the Lighthouse by Dr. Stefanelli, who interviewed A and performed a physical examination. A told Stefanelli that defendant had touched her genital area. During the physical examination, Stefanelli found physical evidence that A had been sexually abused. The staff at the Lighthouse then referred A to a clinical psychologist, Berdine, for treatment.

Berdine met with A in December 2001. At that session, A again stated that defendant had touched her genitals. A also told Berdine that the touching had taken place at her home in Clatsop County. In addition, A told Berdine that defendant had previously touched her when they had lived in Eugene and that she had seen defendant touch her five-year-old cousin, R, at that time.

In July 2002, both A and R took part in videotaped interviews at the Lane County Child Advocacy Center. Because the nature of the center and the circumstances in which those interviews were conducted is significant to the disposition of defendant's appeal, we briefly describe them.

The Lane County Child Advocacy Center is part of a network of similar centers throughout the state. It operates in partnership with the district attorney's office and provides a number of services related to child abuse investigation. Children are referred to the center by law enforcement agencies or Child Protective Services. In addition to performing videotaped interviews of the kind in which A and R participated, the center houses a grand jury and performs medical exams. The center does not offer mental health treatment, but it does refer children for such treatment.

Ray Broderick, the center's director, interviewed A and R separately. In both instances, a Eugene Police Officer videotaped the interview from behind a one-way mirror. Broderick told the children that the interviews were being videotaped. According to Broderick,

> "the whole idea is that the child and family have knowledge that it's going to be video recorded and audio recorded. * * * And it's also done with the parents knowing that this is information that is going to be turned over to whoever the agency that's involved, whether its law enforcement or Child Protective Services."

Broderick himself is a former police officer who describes his current role as "forensic child interviewer" whose job it is to "conduct forensic video interviews" of child abuse victims and to "coordinate interview participation among law enforcement, child protection services and prosecutors."

At the outset of his interviews with A and R, Broderick engaged in an exercise designed to gauge the extent to which the children were suggestible. Thus, Broderick pointed to common animals on a nearby poster and deliberately misidentified them to see if the children were willing to correct him. Later during the course of their respective interviews, both girls stated to Broderick that defendant had inappropriately touched them. A told Broderick that defendant had touched her genital area on more than one occasion. A also told Broderick that she had seen defendant touch R in a similar manner, in an incident that had taken place at R's house in Lane County. R stated to Broderick that defendant had "touched me right here" while pointing to her genital area. R also told Broderick that she had seen defendant touch A.

Defendant was charged by indictment with two counts of sexual penetration and two counts of first-degree sexual abuse, based on the incidents involving A that took place in Clatsop County. Before trial, defendant moved to exclude, as inadmissible character evidence, evidence regarding his conduct in Eugene. The trial court denied that motion.

Defendant's case was tried to a jury. At trial, after both children appeared frightened and refused to answer questions during a competency hearing, the court ruled that A and R were unavailable. The court ruled that the children's hearsay statements regarding defendant's abusive touching, as relayed to Snider, Stefanelli, and Berdine, and the videotaped interviews with Broderick were admissible under exceptions to the hearsay rule. Snider, Stefanelli, and Berdine testified regarding, among other things, the out-of-court statements that A had made to them. In addition, Broderick testified about the nature of the interview process, after which the videotaped interviews were played for the jury. In closing arguments, the prosecution referred to the videotapes several times, reminding the jury that the tapes had been admitted into evidence and that the jury would be able to watch them again as it deliberated.

The jury returned a verdict of guilty on both counts of first-degree sexual abuse and both counts of first-degree

unlawful sexual penetration. The trial court imposed consecutive sentences of 100 months' imprisonment for each of the sexual penetration convictions and imposed concurrent sentences of 75 months' imprisonment on the sexual abuse convictions.

On appeal, defendant advances several assignments of error related to the admission of evidence at his trial and, in a supplemental brief, to his sentencing. He first argues that the court erred in denying his motion to exclude evidence of defendant's conduct in Lane County because that "other bad acts" evidence was inadmissible character evidence, *see* OEC 404(3), and, in any event, was unfairly prejudicial under OEC 403. Defendant next argues that, under the United States Supreme Court's decision in *Crawford*, the trial court erred multiple times by admitting the hearsay statements of the child victims—through the testimony of Stefanelli and Berdine, and through the playing of the videotapes—in violation of his confrontation right under the Sixth Amendment to the United States Constitution. In a supplemental brief, defendant also argues that, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), the trial court erred in imposing consecutive sentences and by imposing restitution based on facts that defendant did not admit and that were not found by a jury, in violation of his constitutional right to a jury. Because the issue is dispositive and requires reversal, we address only defendant's *Crawford* argument without reaching his other assignments.

■■    In *Crawford*, the Supreme Court held that the confrontation right guaranteed by the Sixth Amendment requires that "testimonial" hearsay of an unavailable declarant is not admissible unless the defendant has had a prior opportunity to cross-examine the declarant. 541 US at 68. In this case, defendant argues that A's statements to Stefanelli and Berdine and the videotaped statements of both children to Broderick were testimonial in nature and, because the children were not available for cross-examination, were all therefore inadmissible. As we have noted, defendant failed to advance those arguments to the trial court—*Crawford* was decided after defendant's conviction—but he now argues that admission of the statements was error apparent on the face of

the record. *See* ORAP 5.45 (stating preservation requirement and exception for "error of law apparent on the face of the record"); *State v. Jury*, 185 Or App 132, 136-37, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (appellate court assesses plain error based on law as it exists at time of decision on appeal, not as it existed at time of trial).

The state responds that the admission of the statements at issue is not reviewable as plain error because it is at least reasonably debatable whether they are the kind of "testimonial" statements to which *Crawford* applies. The state argues that, with respect to the statements made to Berdine and Stefanelli, they are not testimonial because they were made for treatment purposes, to health professionals, outside the presence of police or other government officials. The state concedes that the children's interviews with Broderick present a "closer, or less open, question," but it nonetheless argues that their introduction was at least not plainly erroneous.

We disagree with the state. In light of recent cases from the Oregon Supreme Court and the United States Supreme Court, the children's videotaped statements to Broderick were undebatably "testimonial." The admission of those statements was therefore plain error. Further, given the gravity of the error, we exercise our discretion to correct it. Because we conclude that the admission of the videotapes requires reversal, we do not reach the question whether *Crawford* also applies to the children's hearsay statements to Stefanelli or Berdine.

■■ To be reviewable as "plain error," an error must be one of law, it must be "obvious, not reasonably in dispute," and it must appear on the face of the record. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). If we find plain error, we must still decide whether to exercise our discretion to correct it. *State v. Galloway*, 202 Or App 613, 618, 123 P3d 352 (2005), *rev den*, 340 Or 201 (2006). In making that decision, we consider a variety of factors, including " 'the gravity of the error; the ends of justice in the particular case; * * * and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]' " *Id.* (quoting *Ailes*, 312 Or at 382 n 6).

As we have noted, whether the admission of a hearsay statement infringes on a defendant's Sixth Amendment confrontation right depends at the threshold on whether the statement is "testimonial." *Crawford*, 541 US at 51. Unfortunately, in *Crawford* itself, the Court declined to explain in any detail what "testimonial" means, beyond its conclusion that statements elicited during a police interrogation plainly qualify as such. *Id.* at 51-52. More recently, however, both the Oregon Supreme Court and the United States Supreme Court have confronted the question of what it means for a statement to be "testimonial" for *Crawford* purposes, and those cases have helped to shed significantly more light on the issue.

In *State v. Mack*, 337 Or 586, 101 P3d 349 (2004), the Oregon Supreme Court confronted the question whether the videotaped statements that a three-year-old child made to a Department of Human Services caseworker were inadmissible under *Crawford*. The defendant was charged with murdering his girlfriend's two-year-old son, L. L's three-year-old brother was in the house at the time that L died. On two separate occasions, the investigating police officers videotaped the child as he was being interviewed by a DHS caseworker whom the police had asked to conduct the interviews. When the child was later determined to be incompetent to testify, the trial court ruled that the videotaped statements of the child were inadmissible under *Crawford*.

The state appealed, arguing that *Crawford* did not apply because the interview had not been conducted by a police officer. The court rejected that argument, concluding that there was no relevant distinction between the child's statements to the caseworker and the testimonial statements that the court held to be inadmissible in *Crawford*. The court reasoned that the DHS caseworker was functioning as an agent for the police, because she had "elicited statements from [the child] at the request of the officers while they videotaped the interviews" and had "structured the interviews in an age-appropriate way" in order "to elicit information from [the child] relevant to the police investigation." *Id.* at 594. The court concluded that, because the caseworker was serving as a "proxy" for the police and gathering information to assist their investigation, the child's statements to her

were the kind of testimonial statements to which *Crawford* applies. *Id.*

■■    More recently, in *Davis v. Washington*, ___ US ___ , 126 S Ct 2266, 165 L Ed 2d 224 (2006), the United States Supreme Court refined the distinction between testimonial and nontestimonial statements. In that case, the Court reviewed a pair of domestic disturbance cases in which *Crawford* objections had been raised. In the first, the issue was whether statements made to a 9-1-1 emergency operator by a woman in the midst of an altercation with her former boyfriend were testimonial. The Court held that they were not, because the circumstances showed that the primary purpose of the call was not to assist in the investigation of a crime but to "enable police assistance to meet an ongoing emergency." 126 S Ct at 2273. In the second case, the issue was the admissibility of statements made by a woman to police officers who had responded to a report of a domestic disturbance. The woman described to the responding officers how she and her daughter had been attacked by her husband before the police had arrived on the scene. The Court held that those statements were testimonial, because the circumstances showed that the statements were made "as part of an investigation into possibly criminal past conduct." *Id.* at 2278. The decision in *Davis* thus helped to distinguish between testimonial and nontestimonial statements by drawing at least one bright line:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

126 S Ct at 2273-74.

Returning to the facts of this case, we readily conclude that the children's interview with Broderick at the Lane County Child Advocacy Center were "testimonial" under *Mack* and *Davis*. The circumstances of the interview

do not differ in a meaningful way from those in *Mack*. In this case, as in that one, the interviewer interviewed and elicited statements from a young child "so that police officers could videotape them for use in a criminal proceeding." *Mack*, 337 Or at 593. Although, as in *Mack*, the interviews were not conducted by a police officer, they were conducted for the express purpose of furthering a police investigation, with a police officer recording them and with the interviewer explicitly attempting to solicit information from the children that would be useful for defendant's prosecution. Broderick testified that the "whole idea" of the operation is that parents know that their children are interviewed on tape so that their statements can be used in the course of a prosecution. Under *Mack*, therefore, Broderick was acting as an "agent" for the police. 337 Or at 594.

Under *Davis*, the children's videotaped statements to Broderick likewise are unquestionably testimonial, because their primary purpose was to "establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 126 S Ct at 2273.

■ Because the statements were plainly testimonial, under *Crawford*, their admission was plainly erroneous. As we have noted, however, that does not end our analysis, because we have to decide whether to exercise our discretion to reach that error. *See State v. Cox*, 337 Or 477, 500, 98 P3d 1103 (2004) (declining to exercise plain error review of an unpreserved *Crawford* objection).

Whether to exercise our discretion to do so is a case-specific inquiry that involves several factors. *Ailes*, 312 Or at 381. In other cases involving *Crawford* violations that were similarly unpreserved, this court has consistently focused its attention on the gravity of the error, reflecting our concern with whether the state might have chosen to prove its case through other means had it been apprised of the objection. *Galloway*, 202 Or App at 619. In some of those cases, we have concluded that the erroneously admitted evidence was merely cumulative and its omission thus was unlikely to have affected the jury's verdict. In those cases, we have concluded that the error was not grave and have declined to review it. *See, e.g., State v. Poitra*, 206 Or App 207, 215-16,

136 P3d 872, *rev den*, 341 Or 245 (2006) (declining plain error review of unpreserved *Crawford* objection where the state had ample evidence of the defendant's guilt over and above the disputed evidence); *State v. Stalder*, 205 Or App 126, 133 P3d 920, *rev den*, 340 Or 673 (2006) (same); *Galloway*, 202 Or App at 619 (same).

In other cases, we have found the erroneously admitted evidence to be an essential or critical part of the state's case. In those cases, we have exercised our discretion to review the error. *See, e.g., State v. Page*, 197 Or App 72, 83-84, 104 P3d 616 (2005), *rev den*, 340 Or 673 (2006) (exercising discretion to review unpreserved *Crawford* objection where "the evidence against defendant was scant").

Guided by those principles, we conclude in this case that admission of the videotapes was error sufficiently grave to warrant the exercise of our discretion to correct it. All of the state's evidence in this case, ultimately, derived from statements of the two girls, whose credibility was the linchpin of the case. The videotapes thus served a unique and potentially critical purpose of allowing the jury to gauge first-hand the credibility of the children and assess the veracity of their accusations. *Cf. State v. Keller*, 315 Or 273, 285-86, 844 P2d 195 (1993) (holding that, despite the testimony of the child victim and two other witnesses, admission of a doctor's testimony regarding the child's credibility required reversal). In addition, the tapes were referred to by the prosecutor several times in closing argument, including a reminder that the tapes had been admitted into evidence and that the jury would have the opportunity to watch them again as it deliberated.

Under the circumstances of this case, therefore, we conclude that the videotapes comprised a crucial part of the state's case and very likely played a significant role in the jury's deliberations. For that reason, we choose to exercise our discretion to reach the trial court's error in admitting them. Because that requires reversal, we do not reach defendant's other assignments of error related to his conviction and sentencing.

Reversed and remanded.