Argued and submitted November 30, 2006, convictions for fourth-degree assault reversed and remanded; sentences vacated; remanded for resentencing; otherwise affirmed March 14, 2007

STATE OF OREGON,
*Respondent,*

*v.*

ANTONIO MENDOZA-LAZARO,
*Appellant.*

03C-44064; A123566

155 P3d 63

Brandon G. Williams, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

Defendant was convicted of two counts of felony assault in the fourth degree, ORS 163.160(3)(c), and one count of possession of a controlled substance, ORS 475.992. Defendant raises three unpreserved assignments of error. Defendant first claims, based on *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), that his confrontation rights under the Sixth Amendment to the United States Constitution were violated when the trial court admitted certain hearsay statements into evidence. His other challenges are to the trial court's failure to merge his two convictions for fourth-degree assault and to the imposition of departure sentences based on findings made by the court. We reverse and remand on defendant's first assignment of error, and accordingly do not address defendant's other two assignments of error. ORS 138.222(5)(b).

Because the jury found defendant guilty, we recount the facts in the light most favorable to the state. *State v. Derschon*, 206 Or App 574, 576, 138 P3d 30, *rev den*, 341 Or 392 (2006). Defendant lived in an apartment with his girl-friend and her two children, ages three and five. After the police received a call reporting a domestic disturbance, Deputy Hickam was dispatched to the scene. When he arrived, defendant's girlfriend, who was outside the resi-dence with her two children, waved him down. Hickam observed that she was crying, that she had blood running down the side of her lip and several scratches on her neck, and that she was missing a tooth. The children, clinging to her, were also crying. After Hickam learned the names and ages of the children, they were moved to the manager's apart-ment, where the manager calmed them down by playing a children's video. Defendant's girlfriend then told Hickam defendant's identity and that she had been assaulted by him during an argument in their apartment, where she indicated he could still be found.

Hickam and another deputy walked to defendant's apartment and found the door ajar. They could see defendant standing about 20 feet away from them with his hands in his pockets. Concerned about his safety, Hickam handcuffed

defendant and, after Hickam gave him *Miranda* warnings, defendant consented to be searched. Hickam found a small baggie of cocaine in defendant's pocket. Defendant admitted that he and his girlfriend had been arguing but claimed that she lost her tooth when she "hit her head while * * * walking away" from defendant. Hickam advised defendant that he was under arrest and placed him in the patrol car.

Hickam then returned to the manager's apartment to get "an additional statement" from the girlfriend. She told him that she and defendant had been arguing in the bedroom when defendant grabbed and shook her. Defendant then kicked her legs out from under her, causing her to fall, then sat on top of her and punched her several times in the face and scratched her neck. She reported that the children were sitting on the bed watching the entire incident. A neighbor came into the apartment and ordered defendant to get off his girlfriend, at which point she grabbed her children and ran outside.

Defendant was charged with two counts of assault in the fourth degree and one count of possession of a controlled substance. The state subpoenaed defendant's girlfriend to testify at trial, but she did not appear. Lacking her testimony, the state offered her out-of-court statements about the incident through Hickam's testimony. A jury found defendant guilty of all charges.

Defendant contends that all of his girlfriend's statements regarding the incident were inadmissible under *Crawford* and *Davis v. Washington*, 547 US ___ , 126 S Ct 2266, 165 L Ed 2d 224 (2006), because those statements were "testimonial." Defendant acknowledges that he did not object at trial to the admission of the statements but urges us to review their admission as plain error under ORAP 5.45(1).

The state separates the statements into two categories—those occurring before and after defendant's arrest. Contrary to defendant's position, the state contends that at least the first set of statements was not testimonial, so admitting them was not error, and certainly not plain error. Regarding the second set of statements, the state acknowledges that those statements were probably testimonial, but contends that even if they were admitted in error, the error

was harmless. We conclude that admission of the second set of statements was plain error and that, because the admission was critical to the state's case, defendant's assault convictions must be reversed.

■■■ This court may exercise its discretion to address an unpreserved error of law that is "apparent on the face of the record." ORAP 5.45(1). An error is plain if it is purely legal, obvious and not reasonably in dispute, and depends on irrefutable predicate facts, so that we are not required to go beyond the record or choose between competing inferences. *State v. Page*, 197 Or App 72, 78, 104 P3d 616 (2005), *rev den*, 340 Or 673 (2006). In deciding whether to exercise our discretion to address such an error, we consider "the gravity of the error, the ends of justice in the particular case; * * * and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]" *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). Adopting the state's separation of the statements into two sets, we hold that the admission of the second set of statements was plain error and exercise our discretion to address it.

In *Crawford*, the Supreme Court held that the Sixth Amendment Confrontation Clause[1] prohibits the "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 US at 53-54. The Court did not offer a precise definition of testimonial statements but did identify some examples, including statements given in response to police interrogation. *Id*. at 51-52.

In *Davis*, in the course of reviewing two domestic disturbance cases, the Court clarified the distinction between testimonial and nontestimonial statements. In the first case, the issue was whether statements made in the context of a 9-1-1 call were testimonial. 126 S Ct at 2270-71. The Court held that those statements were nontestimonial because the primary purpose of the call was to "enable police assistance to

---

[1] The Sixth Amendment to the United States Constitution provides, in part, that, "[in] all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

meet an ongoing emergency." *Id*. at 2277. In the second case, a woman made statements to police about an altercation that had occurred before the police arrived. *Id*. at 2272. When the police initially approached the woman, she told them that "everything was fine." *Id*. As one officer continued the questioning, another officer kept the defendant in another room. *Id*. The Court said that the statements obtained during that questioning were testimonial because there was no "immediate threat" and the statements were made as "part of an investigation into possibly criminal past conduct." *Id*. at 2278. The Court summarized the distinction between the statements at issue in the two cases this way:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

*Id*. at 2273-74.

■    As the state apparently acknowledges, it is beyond dispute that the second set of statements made by defendant's girlfriend here falls squarely within what *Davis* defines as testimonial.[2] The second set of statements occurred after defendant had been arrested and placed in the patrol car. Once defendant was secured, there was no longer an "ongoing emergency," nor was there any "immediate threat." *See id*. at 2273-74, 2278. Accordingly, Hickam resumed questioning defendant's girlfriend primarily in order to "establish or prove past events." *See id*. at 2273-74. Because the statements were testimonial under *Davis*, their admission was plainly erroneous.

■    We next must decide whether to exercise our discretion to correct that error. In cases involving unpreserved

---

[2] The first set of statements does not fall squarely into the category of testimonial statements defined in *Davis* and may well be nontestimonial. In any event, it was not plain error to treat those statements as nontestimonial, and we do not resolve that question here.

*Crawford* errors, this court has focused on the "gravity of the error." *State v. Pitt*, 209 Or App 270, 279, 147 P3d 940 (2006). In general, we exercise our discretion to review such errors when the erroneously admitted evidence was found to be an "essential or critical" part of the state's case, but decline to do so when the evidence was "merely cumulative and its omission thus was unlikely to have affected the jury's verdict." *Id.* at 279-80. That inquiry reflects our concern with whether the state, had it been apprised of an objection to the admission of the evidence, would have chosen to prove its case through other means. *Id.* at 279.

■    Here, we exercise our discretion to correct the error because the evidence was critical to defendant's felony fourth-degree assault convictions.[3] Fourth-degree assault is a felony, as opposed to a misdemeanor, when the assault "is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child * * *." ORS 163.160(3)(c). The only evidence establishing that the incident at issue was witnessed by the two children was defendant's girlfriend's erroneously admitted statement that the two children were sitting on the bed watching the assault. Although the state contends that the content of the first set of statements was enough to establish that the children were present, we disagree. During that first interview, the girlfriend merely identified defendant, said that she had been assaulted by him, and that he was still in their apartment. None of that evidence can be viewed as "cumulative" to establishing that the children witnessed the assault. It follows that the girlfriend's second set of statements was critical to the state's case and, accordingly, we exercise our discretion to correct the error.

Convictions for fourth-degree assault reversed and remanded; sentences vacated; remanded for resentencing; otherwise affirmed.

---

[3] Defendant also was convicted of possession of a controlled substance but does not contend that the *Crawford* error implicated that conviction.