Argued and submitted on May 11, 2007, reversed and remanded May 7, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ALAN MICHAEL ALNE,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0201273; A124918

184 P3d 1164

Jesse Wm. Barton argued the cause for appellant. With him on the brief was Steven J. Sherlag.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

WOLLHEIM, P. J.

**WOLLHEIM, P. J.**

Following a trial to the court, defendant was convicted of one count each of first-degree sodomy, ORS 163.405; first-degree unlawful sexual penetration, ORS 163.411; and first-degree sexual abuse, ORS 163.427. On appeal, he raises six assignments of error. Because we reverse defendant's convictions and remand on the ground that his federal Confrontation Clause rights were violated, we do not address his other assignments of error.

Defendant was friends with the parents of the complainant, C, who was four years old at the time of the events leading to defendant's prosecution. C's parents asked defendant to babysit C and C's younger brother on several occasions in 2002. On one occasion, C's parents returned to find the two children taking a bubble bath together. On another occasion, defendant took the children shopping and he bought a bra and underwear set for C. When they returned from that shopping trip, C told her mother that she wanted defendant to go and that she did not feel well. C's face was flushed, and she ran straight into her room. C told her mother that defendant had made her "try on clothes that hurt, and she wanted a bathing suit, and he made her get undergarments."

A few days after the shopping trip, C's father was playing with C and tickling her. When he accidentally touched the inside of her leg, she said, "Don't touch me there, it's not appropriate." After her father apologized, C stated that defendant had touched her there. When her father asked her what she meant, C stated that defendant had touched her there with his finger and his tongue. C clarified that the touching had taken place on her vagina. C's father told her that they would discuss it more when her mother returned. When C's mother returned, C's father told her about the conversation that he had had with C. The mother called C's physician's office for advice about how to ask C more about what had occurred with defendant. C's mother then took C into the mother's bedroom and initiated a conversation with her. C told her mother that defendant had "licked her private spot" and that he had used his finger.

C's mother called CARES, and she took C to CARES the following afternoon.[1] The CARES examiner, a pediatric nurse practitioner, testified that her examination of C revealed no abnormal physical findings. The nurse practitioner testified that C told her that defendant had touched her with his finger and his tongue. C told the examiner that defendant had put his finger in her vagina. The nurse practitioner testified that her "diagnostic finding" was "highly concerning for sexual abuse." A CARES social worker also conducted an interview with C, which was videotaped. The social worker testified at trial, and the videotape was admitted as an exhibit and viewed by the court. In the videotaped interview, C repeated the statements that she had made to others about defendant's conduct. The social worker testified,

> "[T]he thing that was most compelling about [C's] statements is that there was some sort of idiosyncratic detail that I just found quite compelling, that she described the family friend, [defendant], licking his finger before touching her on the front private area. When I tried to get more information about that, she said, 'Well, I couldn't see what he was doing down there.' "

At the time of trial, C was six years old. At the commencement of the trial to the court, the state called C as a witness. Because C was not responsive to the court's questions, the court found her not competent to testify and unavailable for purposes of the Oregon Evidence Code and the Confrontation Clause. Ultimately, following trial, defendant was convicted of the three crimes listed above.

Post-trial, defendant filed a motion for a new trial, on the following grounds:

> "i) newly discovered evidence; ii) the record does not support the finding that the complaining witness was incompetent, depriving [defendant] of the fundamental right to confront his accusers; iii) rulings regarding the motion to suppress and motion in limine re exhibits 11 and 12 are not

---

[1] A witness described CARES as "a specialty medical clinic * * * where all children in * * * the tri-county area come when there are concerns of physical or sexual abuse and neglect[.]" For a more detailed description of CARES, see, for example, *State ex rel Juv. Dept. v. S. P.*, 218 Or App 131, 149-51, 178 P3d 318 (2008).

supported by law; and iv) [defendant] was deprived of his fundamental right to testify at trial."

The motion was denied. Later, on the day that the United States Supreme Court decided *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), defendant filed a supplemental motion for a new trial in which he asked for a new trial "based upon a denial of confrontation as guaranteed by the Sixth Amendment to the United States Constitution, under" *Crawford*.[2] In *Crawford*, the Court held that the confrontation right guaranteed by the Sixth Amendment makes inadmissible "testimonial" hearsay of an unavailable declarant unless the defendant has had a prior opportunity to cross-examine the declarant. *Id.* at 68. That motion, too, was denied.

On appeal, as noted, defendant raises a number of assignments of error. Because it is dispositive, however, we address only defendant's *Crawford*-based Confrontation Clause claim. Defendant argues that the trial court erred in admitting C's hearsay statements through the testimony of CARES personnel and through the videotape of the CARES evaluation. Defendant asserts that his motions for a new trial preserved the issue for appeal; he argues alternatively that, if we reject his position that the claim is preserved, we should address it as error apparent on the face of the record ("plain error"). The state responds that defendant did not preserve his Confrontation Clause claim through his motions for a new trial. Moreover, the state asserts, we should not address the unpreserved claim as plain error.

We need not decide whether defendant preserved his claim of error because, even if he did not, we would exercise our discretion to address it as plain error. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record."). Plain error analysis is a two-step process. First, we must determine

[2] The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

whether the claimed error is apparent on the face of the record; if it is not, we will not address it. Generally, an error is "apparent" when three conditions are met: (1) the error is one of law; (2) the error is not reasonably in dispute; and (3) the error appears on the face of the record such that the court need not choose between competing inferences to identify it. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). If we conclude that the trial court did commit plain error, we must determine whether we will exercise our discretion to address the error. *See, e.g., State v. Ramirez*, 343 Or 505, 511, 173 P3d 817 (2007) (describing sequential process in plain error analysis).

■ We begin with the first inquiry: Did the trial court commit plain error? We addressed that question in the context of a *Crawford* claim relating to testimony by the director of the Lane County Child Advocacy Center, an entity similar to CARES. In *State v. Pitt*, 209 Or App 270, 147 P3d 940 (2006), *adh'd to on recons*, 212 Or App 523, 159 P3d 329 (2007), we addressed whether children's statements during an interview at the advocacy center were "testimonial" for *Crawford* purposes. If they were, we pointed out, the trial court erred in admitting them. Referring to *State v. Mack*, 337 Or 586, 101 P3d 349 (2004), and *Davis v. Washington*, 547 US 813, 126 S Ct 2266, 165 L Ed 2d 224 (2006), we concluded that the statements were testimonial:

> "[W]e readily conclude that the children's interview[s] * * * at the Lane County Child Advocacy Center were 'testimonial' under *Mack* and *Davis*. The circumstances of the interview do not differ in a meaningful way from those in *Mack*. In this case, as in that one, the interviewer interviewed and elicited statements from a young child 'so that police officers could videotape them for use in a criminal proceeding.' *Mack*, 337 Or at 593. Although, as in *Mack*, the interviews were not conducted by a police officer, they were conducted for the express purpose of furthering a police investigation, with a police officer recording them and with the interviewer explicitly attempting to solicit information from the children that would be useful for defendant's prosecution. [The center's director] testified that the 'whole idea' of the operation is that parents know that their children are interviewed on tape so that their statements can be used in the

course of a prosecution. Under *Mack*, therefore, [the director] was acting as an 'agent' for the police. 337 Or at 594."

*Pitt*, 209 Or App at 278-79. "Because the statements were plainly testimonial, under *Crawford*," we explained, "their admission was plainly erroneous." *Id.* at 279.

It is impossible to meaningfully distinguish the statements that C made to CARES personnel here from the statements at issue in *Mack* and *Pitt*. Moreover, in two cases decided since *Pitt*, we have determined that a child's statements to CARES personnel were testimonial and that their admission was erroneous. *See State v. Norby*, 218 Or App 609, 180 P3d 752 (2008); *State ex rel Juv. Dept. v. S. P.*, 218 Or App 131, 178 P3d 318 (2008). In light of those cases, we conclude that the trial court committed plain error in admitting C's out-of-court statements through the testimony of CARES personnel and through the videotape of the evaluation. *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (asserted plain error is determined at the time of the appeal, not at the time of trial).

■ Under the second inquiry, the question remains whether we should exercise our discretion to correct the error. In *Pitt*, after determining that the trial court erred under *Crawford* in admitting the out-of-court statements, we addressed whether to exercise our discretion to correct the error. We explained that, in other cases involving unpreserved *Crawford* errors, "this court has consistently focused its attention on the gravity of the error, reflecting our concern with whether the state might have chosen to prove its case through other means had it been apprised of the objection." *Pitt*, 209 Or App at 279. We noted that, in conducting the "case-specific inquiry," we have chosen to address the error in some cases, while declining to do so in other cases. *Id.*

Ultimately, in *Pitt*, we chose to correct the error. As we explained,

"[W]e conclude in this case that admission of the videotapes was error sufficiently grave to warrant the exercise of our discretion to correct it. All of the state's evidence in this case, ultimately, derived from statements of the two girls, whose credibility was the linchpin of the case. The videotapes thus served a unique and potentially critical purpose

of allowing the jury to gauge first-hand the credibility of the children and assess the veracity of their accusations. *Cf. State v. Keller*, 315 Or 273, 285-86, 844 P2d 195 (1993) (holding that, despite the testimony of the child victim and two other witnesses, admission of a doctor's testimony regarding the child's credibility required reversal). In addition, the tapes were referred to by the prosecutor several times in closing argument, including a reminder that the tapes had been admitted into evidence and that the jury would have the opportunity to watch them again as it deliberated.

"Under the circumstances of this case, therefore, we conclude that the videotapes comprised a crucial part of the state's case and very likely played a significant role in the jury's deliberations. For that reason, we choose to exercise our discretion to reach the trial court's error in admitting them."

*Pitt*, 209 Or App at 280.

That analysis applies equally here. Although this case was tried to the court, all the evidence against defendant ultimately derived from C's statements. Here, as in *Pitt*, the trial court viewed the videotapes (twice, in this case), and the prosecutor referred to them in her arguments to the court. And, in fact, the trial judge in this case referred to the videotape in his remarks explaining his decision. We conclude that the erroneously admitted out-of-court statements likely played a role in the trial court's decision, and we thus exercise our discretion to address the error.

■■ The final question we must address is whether the trial court's error was harmless. *See generally Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967) (federal constitutional error must be harmless beyond a reasonable doubt to support affirmance on appeal). In reviewing the whole record to determine whether an error was harmless, the court should consider " 'the importance of the [improperly admitted] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, * * * and, of course, the overall strength of the prosecution's case.' " *State v. Cook*, 340 Or 530, 544, 135 P3d 260 (2006) (quoting *Delaware v.*

*Van Arsdall*, 475 US 673, 684, 106 S Ct 1431, 89 L Ed 2d 674 (1986) (brackets and ellipsis in *Cook*)). The state asserts that, "even if it was error to admit the videotape or the forensic interviewer's testimony about what the victim said, that error would be no more than harmless[,] for the victim told her parents and the nurse practitioner almost exactly what she told the interviewer." We disagree, for essentially the same reasons that support our decision to exercise discretion to address the error.

We recently rejected a harmless error argument in nearly identical circumstances. In *Norby*, as in this case, the trial court erroneously admitted the alleged victim's hearsay statements made to CARES personnel. There, as here, the alleged victim made similar or identical statements to witnesses other than CARES personnel. Acknowledging that "when several witnesses testify to the same effect, the erroneous admission of one witness's testimony often will be harmless," we cautioned that, "the role and status of each witness also is relevant to the harmless error determination." 218 Or App at 620. We concluded that the CARES physician's "unique training and experience in child abuse assessment would likely have given the statements greater weight in the jury's eyes." *Id.* We also pointed out that the jury likely gave the CARES physician's recounting of the alleged victim's statements more weight because they knew that the physician had used the statements to support her diagnosis of sexual abuse. *Id.* at 621. We concluded that, in light of "the importance of the [CARES physician's] testimony, the scant corroborating evidence, and the overall strength of the state's case," the error was not harmless. *Id.*

Those same considerations lead to the same conclusion in this case. Here, C's statements to the CARES examiner were more graphic and detailed than her statements to her mother and father. There was no physical evidence of the charged crimes. And finally, as noted above, the court—sitting as trier of fact—explicitly relied on the erroneously admitted videotape. For those reasons, we conclude, as we did in *Norby*, that the trial court's error was not harmless beyond a reasonable doubt.

Reversed and remanded.