Submitted on record and briefs November 29, 2007, affirmed March 19, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN JAY SHELTON,
*Defendant-Appellant.*

Morrow County Circuit Court
04CF114; A129311

180 P3d 155

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Shawn Wiley, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Riggs, Senior Judge.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of four counts of sexual abuse in the first degree, ORS 163.427. He appeals from the convictions on two of those counts, arguing that the trial court erroneously admitted hearsay statements made by the victim. He contends that, because the victim was unavailable and defendant did not have the opportunity to cross-examine her, admitting her statements violated his Sixth Amendment right to confront the witnesses against him, as the right was interpreted in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). We conclude that one of the statements, a remark to the victim's babysitter, was not testimonial and therefore not inadmissible under *Crawford*, and that admitting the other statement, even if the statement was testimonial, was harmless error. We therefore affirm.

Two of the counts against defendant relate to acts involving his youngest daughter, T, who was four years old at the time of trial; the other two counts involved T's older sister. This appeal concerns only the acts involving T. In 2004, T and her sister were living with their mother, a friend of their mother's named Deborah, and Deborah's teenaged daughter Brittany, who frequently provided childcare for the girls. On alternate weekends, the girls visited defendant. Between August and October 2004, Deborah noticed T engaging in unusual and inappropriate behavior. On one occasion, Deborah observed T pull her underwear aside and attempt to insert rocks in herself. She also noticed that T inappropriately touched Deborah's father and other visitors. The first allegation of sexual abuse was raised after Brittany saw T grab the genitals of a male neighbor. When Brittany asked T why she had done that, she responded that defendant liked it when she did it to him. Brittany asked T whether anybody had touched her before, and T said that defendant had. Brittany then asked T where defendant had touched her, and T pulled her underwear aside and inserted her finger into her vagina.

The Department of Human Services (DHS) was notified about T's allegation that defendant had touched her. DHS then reported the allegation to the Boardman Police Department, which assigned an officer to interview T and her sister. During the officer's initial interview with the children,

they did not disclose any information about sexual abuse; the officer therefore decided against pursuing any criminal charges against defendant.

Shortly after the interviews with the officer, the children were taken to Columbia River Community Health Services to be examined for possible abuse. Jeffries, a medical assistant, prepared the children for their exam. She explained to the children that it was important to answer the examiner's questions truthfully. She did not question the children, but at one point T began to tell Jeffries that somebody had touched her. Before any follow-up questions were asked or T identified who "somebody" was, T's sister interrupted and said, "We're not supposed to tell." No further questioning occurred. During the subsequent examination, T's sister indicated that defendant had inappropriately touched her.

Before trial, the court held a hearing and concluded that T's sister was competent to testify, but T was not. Additionally, the court issued a pretrial order over defendant's objection declaring that T's hearsay statements could be offered through the testimony of Brittany and Jeffries. The court reasoned that the statements were admissible under the evidence code, and, because the statements were not testimonial, they did not violate the Sixth Amendment as interpreted in *Crawford*. During trial, defendant renewed his objection, but the trial court allowed Brittany and Jeffries to testify to the statements T made about being touched. Defendant was ultimately convicted of two counts of sexual abuse against each child.

On appeal, defendant's assignments of error relate to the two counts involving T. As noted above, he argues that admitting testimony from Brittany and Jeffries regarding statements made by T violated his Sixth Amendment confrontation rights under *Crawford*. We begin by determining whether defendant's confrontation right was violated under the state constitution. *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981); *State v. Steen*, 215 Or App 635, 639, 170 P3d 1126 (2007).

Article I, section 11, of the Oregon Constitution guarantees criminal defendants the right to "meet the witnesses face to face." Under that guarantee, hearsay evidence may

not be admitted against a defendant unless the witness is unavailable and the testimony bears adequate indicia of reliability. *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985) (adopting the United States Supreme Court's analysis in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), for purposes of addressing Article I, section 11); *see also State v. Cook*, 340 Or 530, 540, 135 P3d 260 (2006) (applying the *Roberts* test to Article I, section 11, post-*Crawford*). An inference of reliability exists where evidence falls into a firmly rooted hearsay exception. If evidence does not fall into a firmly rooted hearsay exception, it is nonetheless admissible if there is a showing of " 'particularized guarantees of trustworthiness.' " *Campbell*, 299 Or at 648 (quoting *Roberts*, 488 US at 66). It is undisputed that T was unavailable because she was not competent to testify. The issue is whether the statements she made, which were admitted through the testimony of Brittany and Jeffries, fall within a firmly rooted hearsay exception or bear adequate indicia of reliability.

Brittany's hearsay testimony recounting T's accusation of defendant was admitted under OEC 803(18a)(b). That rule creates a hearsay exception for statements made by a declarant under the age of 12 concerning an act of abuse. OEC 803(18a)(b) requires that the declarant be unavailable and that

> "the proponent establish[ ] that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of abuse and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted."

OEC 803(18a)(b) is not "firmly rooted" in the same sense as, for example, the business record exception or the exception for dying declarations; it was not added to the evidence code until 1989. Or Laws 1989, ch 881, § 1.

However, we have previously recognized that, if evidence satisfies the criteria for admissibility under OEC 803(18a)(b), it does not violate a defendant's confrontation rights under Article I, section 11. *State v. Reed*, 173 Or App

185, 192, 21 P3d 137, *rev den*, 332 Or 559 (2001); *State v. Renly*, 111 Or App 453, 461, 827 P2d 1345 (1992) ("OEC 803(18a)(b) protects a defendant's confrontation rights with greater clarity, detail and precision than *Roberts* and [*Idaho v.*] *Wright*, [497 US 805, 110 S Ct 3139, 111 L Ed 2d 638 (1990)] seem to require."). In this case, the trial court concluded that T's statements to Brittany and Jeffries bore the necessary indicia of reliability and defendant does not assign error to that conclusion. Thus, T's statements to Brittany were admissible under Article I, section 11.

■ The statement T made to Jeffries was admitted under the hearsay exception for statements made for purposes of medical diagnosis or treatment, OEC 803(4), which is a firmly rooted hearsay exception. *State v. Barkley*, 315 Or 420, 430-31, 846 P2d 390 (1993). Therefore, we conclude that the statement made to Jeffries, like the one made to Brittany, is admissible under Article I, section 11.

■ Defendant focuses his argument on the Sixth Amendment as applied in *Crawford*. In that case, the United States Supreme Court held that testimonial hearsay statements may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 US at 53-54. Although the Court did not define "testimonial" in *Crawford*, the opinion in that case and the Court's subsequent opinion in *Davis v. Washington*, 547 US 813, 126 S Ct 2266, 165 L Ed 2d 224 (2006), provide guidance. A testimonial statement is one made by an "accuser" that can be characterized as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 US at 51 (citation and internal quotation marks omitted). The Court in *Crawford* explained that the Confrontation Clause was designed to eliminate the civil law practice of using *ex parte* statements from earlier judicial or quasi-judicial proceedings, *id.* at 50, and that statements obtained through the modern equivalents to those proceedings are testimonial. *Id.* at 68. The Court noted that testimonial evidence clearly encompasses "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and * * * police interrogations." *Id.* at 68.

In *Davis*, the Court distinguished statements made in response to questions asked by a police officer for the purpose of rendering assistance in the course of an on-going emergency—which are not testimonial—from statements responding to interrogation designed to produce evidence for later use in a criminal prosecution—which are testimonial. The latter statements are testimonial because the primary purpose is "to establish or prove past events potentially relevant to later criminal prosecution." 547 US at 822.

■ We have recently examined the question of when hearsay statements by the victim of child abuse are "testimonial" for purposes of the Sixth Amendment. Reviewing relevant United States Supreme Court and Oregon cases—*Davis, Crawford, State v. Camarena*, 344 Or 28, 176 P3d 380 (2008), *State v. Mack*, 337 Or 586, 101 P3d 349 (2004), and *State v. Pitt*, 209 Or App 270, 147 P3d 940 (2006), *adh'd to on recons*, 212 Or App 523, 159 P3d 329 (2007)—we concluded that whether an unavailable child victim's statement is testimonial almost invariably "will depend on a variety of considerations." *State ex rel Juv. Dept. v. S. P.*, 218 Or App 131, 149, 178 P3d 318 (2008). The major considerations include the primary purpose of the questioner who elicited the statement, the primary purpose of the declarant, and the "nature and extent of police or prosecutorial involvement." *Id.* Here, nothing suggests that the primary purpose of either Brittany or T was to establish some fact to be used subsequently in a criminal prosecution. Rather, Brittany's testimony indicates that she asked T whether she had been touched because she was concerned for T's welfare, or perhaps out of curiosity, and not because she wanted defendant to be prosecuted. Further, and more significantly, there was no police or prosecutorial involvement in the conversation during which T told Brittany about defendant's actions. Accordingly, T's statements to Brittany were not testimonial and were properly admitted.

■ T's statement to Jeffries presents a closer question. In *Mack*, 337 Or at 593-94, the Supreme Court held that a statement elicited from a child abuse victim by a DHS caseworker was testimonial because the caseworker was a "proxy" for police, assigned the task of eliciting information

"relevant to the police investigation." Arguably, Jeffries played a similar role. However, we need not decide that question because, even if the statement was testimonial and admitting it was error, the error was harmless.

■ ■ Violations of federal constitutional rights must be addressed under the federal harmless error standard. *State v. Cook*, 340 Or 530, 544, 135 P3d 260 (2006). Under that standard, a violation of the Sixth Amendment does not require reversal "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986). The Supreme Court has provided factors to guide our analysis: "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* 475 US at 684. Applying those factors, we conclude that, if the admission of Jeffries's testimony violated the Sixth Amendment, it was harmless beyond a reasonable doubt.

■ Jeffries's testimony was admitted to corroborate defendant's confession; a confession alone is not sufficient to warrant a conviction unless the confession is corroborated by "some other proof that the crime has been committed." ORS 136.425. The state can establish corroboration by "evidence from which the jury may draw an inference that tends to establish or prove that a crime has been committed." *State v. Lerch*, 296 Or 377, 398, 677 P2d 678 (1984). The Supreme Court and this court have recognized that an allegation by a child that she has been sexually abused is " 'some other evidence' sufficient to corroborate the confession of [a] defendant." *Campbell*, 299 Or at 647 ("complaint from a three-year-old that a person 'licked her tee-tee' is certainly 'some other evidence' "); *State ex rel Juv. Dept. v. Karabetsis*, 77 Or App 583, 588-89, 713 P2d 1075 (1986) (nine-year-old-victim's statement that someone had had sexual intercourse with her was sufficient to corroborate the defendant's confession to that act).

In this case, defendant's confession was corroborated by Brittany's testimony that T told her that defendant inappropriately touched her and by testimony from Deborah (T's mother's friend and Brittany's mother) about T's unusual behavior. Therefore, Jeffries's testimony is merely cumulative. Additionally, T's general statement to Jeffries that "somebody" had touched her was much less probative than the more specific statements that she made to Brittany that *defendant* had touched her vagina. Accordingly, we conclude that, if the statement T made to Jeffries was testimonial, it was cumulative and only minimally probative, and that its admission was harmless beyond a reasonable doubt. *Compare State v. Norby*, 218 Or App 609, 620-21, 180 P3d 752 (concluding that a victim's hearsay statements made to a physician collaborating with law enforcement were not harmless where the defendant had not confessed to the crime).

Affirmed.