Submitted January 15, 2019; convictions on Counts 1 through 10 reversed, convictions on Counts 13, 16, and 17 reversed and remanded, remanded for resentencing, otherwise affirmed May 5, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CALEB JAMES LEE JOHNSON,
aka Caleb Jamelee Johnson,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CR25479; A164500

489 P3d 1046

Defendant appeals a judgment of conviction for five counts of first-degree sodomy, ORS 163.405, and five counts of first-degree sexual abuse, ORS 163.427, stemming from defendant's alleged sexual abuse of his stepdaughter. On appeal, defendant contends that the trial court erred in (1) denying his motion for judgment of acquittal (MJOA) as to Counts 1 through 16 and Count 18 because the state failed to sufficiently corroborate his confessions as required under ORS 136.425(2); (2) instructing the jury that its verdicts need not be unanimous; (3) submitting a jury verdict form that allowed for nonunanimous verdicts; and (4) receiving nonunanimous jury verdicts. The state concedes that the court erred by receiving nonunanimous verdicts and by denying defendant's MJOA as to Counts 1 through 11, but argues that the court properly denied the MJOA on the remaining counts because the child victim's disclosure sufficiently corroborated defendant's confessions pertaining to those counts. *Held*: The Court of Appeals accepted the state's concessions. However, the trial court properly denied defendant's MJOA as to Counts 12 through 16 and Count 18 because the child victim's disclosure sufficiently corroborated defendant's confessions relating to those counts. Of the counts remaining, the verdicts on Counts 13, 16, and 17 were nonunanimous and those convictions must be reversed and remanded. Defendant's challenge to the nonunanimous jury instructions as to the unanimous verdicts is foreclosed by *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020).

Convictions on Counts 1 through 10 reversed; convictions on Counts 13, 16, and 17 reversed and remanded; remanded for resentencing; otherwise affirmed.

Kathleen M. Dailey, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Joshua B. Crowther, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jacob Brown, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.

DeHOOG, P. J.

Convictions on Counts 1 through 10 reversed; convictions on Counts 13, 16, and 17 reversed and remanded; remanded for resentencing; otherwise affirmed.

**DeHOOG, P. J.**

Defendant appeals a judgment of conviction for five counts of first-degree sodomy, ORS 163.405, and five counts of first-degree sexual abuse, ORS 163.427. Defendant raises 19 assignments of error and 12 supplemental assignments of error, contending that the trial court erred in (1) denying his motion for judgment of acquittal as to Counts 1 through 16 and Count 18; (2) instructing the jury that its verdicts need not be unanimous; (3) submitting a jury verdict form that allowed for nonunanimous verdicts; and (4) receiving nonunanimous jury verdicts as to Counts 3, 5, 6, 7, 8, 10, 13, 16, 17, and 18. For the reasons that follow, we agree with some, but not all of defendant's contentions. We agree, as the state concedes, that the trial court erred in denying defendant's motion for judgment of acquittal on Counts 1 through 11, and, except for Count 11, reverse as to those counts.[1] The trial court did not, as defendant contends, err in denying his motion for judgment of acquittal as to Counts 12 through 16 or Count 18, and defendant did not move for a judgment of acquittal on Count 17; however, we reverse and remand his convictions on Counts 13, 16, and 17 because the jury's verdicts on those counts were not unanimous.[2] We otherwise affirm.[3]

We first consider defendant's arguments regarding his motion for judgment of acquittal because they are dispositive as to a number of counts. Defendant's first through seventeenth assignments of error contend that the trial court erred in declining to acquit him on Counts 1 through 16 and Count 18. Defendant contends that the state failed to produce evidence sufficient to corroborate his confessions as

---

[1] The jury acquitted defendant on Count 11, and, therefore, there is no conviction to reverse.

[2] The trial court also erred in accepting a nonunanimous verdict on Count 18. However, the court merged that verdict with the jury's verdict on Count 15, for which the jury's verdict was unanimous. As a result, there is no conviction on Count 18 for us to reverse.

[3] Defendant also argues that the trial court erred by failing to merge the guilty verdicts on Counts 12 and 13, as well as the guilty verdicts on Counts 15 and 16. Because Counts 13 and 16 are reversed and remanded pursuant to *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), and a different record may well be produced if there is a new trial, we do not address defendant's merger arguments.

to those counts, as required under ORS 136.425(2), because the state's evidence did not tend to establish that those crimes had been committed. The state concedes that the trial court erred in denying defendant's motion for judgment of acquittal on Counts 1 through 11. On Counts 12 through 16 and Count 18, however, the state argues that the court correctly denied the motion because the child victim's disclosure sufficiently corroborated defendant's confessions as to those counts.

"When reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the state and determine whether a rational fact finder could have inferred that the state had proven all of the essential elements of the charged crime beyond a reasonable doubt." *State v. Nickles*, 299 Or App 561, 562, 451 P3d 624 (2019). However, in determining whether the state has met that burden, we may consider evidence of a defendant's confession only if the confession is supported by legally sufficient corroborating evidence. *Id.* We state the relevant facts with those standards in mind.

In April 2016, defendant was married to Johnson and lived with her and Johnson's three-year-old daughter, B. On the evening of April 27, 2016, while defendant was at work, B disclosed to Johnson that B had "had to put [her] mouth on daddy's pee-pee." Johnson asked B whether she was referring to defendant, and B said, "Yes." Johnson asked B when this had happened, and B responded, "Before school." Johnson asked B what she had done, to which B replied, "So I finished it." Finally, Johnson asked B how she had felt about that, and B answered, "I didn't like it." B also told Johnson, "Daddy said that mommy does it, so I have to do it."

After putting B to bed for the evening, Johnson called defendant on his cell phone and confronted him with what B had told her. When Johnson asked defendant whether B's statements were true, defendant replied, "Yes," and, "Can we talk about it?" The next day, defendant told Johnson that it had "happened more than once" and that, "the farthest it had [gone] was having [B] put her mouth on his penis and a little of rubbing up *** in between her

legs." During their conversation, defendant told Johnson that it had been going on since the beginning of that year and expressed regret and remorse.

Johnson filed a report with the police and also notified the pastor of the church that she and defendant attended. Sometime thereafter, defendant sent a message to the pastor and another church member that said, "Hey, guys. I don't know how you are feeling about me right now, but I'm scared. I feel lost. I don't know what to do. My life as I know it, is over, but not just mine. I have ruined [Johnson] and [B's] lives as well. I am just hurting so bad right now and I don't know how I will forgive myself. I feel all alone."

On April 29, defendant went to the police station and gave a detailed confession to Detective Gandy. Defendant confessed to having sexually assaulted B on several occasions beginning in February of that year, during which he had placed B's hands on his penis and rubbed his penis against her backside, between her legs, and against her vagina. Defendant told Gandy that each incident had occurred in the morning, while he was getting B ready for school. Defendant explained that his behavior had escalated one morning in April, when he had pulled out his penis and asked B to put it in her mouth. Defendant said that B had placed her lips on his penis for about 10 seconds before pulling away. B told defendant that she did not like it and did not want to do it. At that point, defendant told B, "it's okay 'cause mommy does it," and he put his penis in B's mouth for 10 to 20 seconds. Defendant told Gandy that he then left B in her bedroom and went to the bathroom alone.

Defendant next told Gandy about another incident in April, during which he had again asked B to put his penis in her mouth, and said that on that occasion she had initially done what he asked. When B then pulled defendant's penis out of her mouth and said, "I don't like it, Daddy," defendant told her, "Okay. Just a little bit more and you don't have to do it again," and put his penis back in her mouth. At some point, B said, "I don't want to anymore," and defendant replied, "Okay, baby. I just *** have to finish and then we can go to school." Defendant told Gandy that, at that point, he had taken B into the bathroom with him and "finished

himself off." After masturbating, defendant "asked her if she would lick" his penis. B said that she did not want to, and defendant replied, "Okay baby. You don't have to if you don't want to, but could you just do it just one time, just a little bit?" B touched the tip of defendant's penis with her tongue and then pulled away.

As a result of B's disclosures and defendant's confessions, defendant was ultimately charged by indictment with 18 counts of first-degree sexual abuse and first-degree sodomy. At defendant's ensuing trial, the prosecution explained in closing arguments that each of the 18 counts corresponded to the acts described in defendant's confession to Gandy. Counts 1 through 11 corresponded to the earlier incidents in which defendant confessed to having had B touch his penis with her hand and having rubbed his penis on various parts of her body. Based on defendant's confession to that conduct, he was charged with 11 counts of first-degree sexual abuse alleged to have occurred from about February 1 to April 1. However, on appeal, the state acknowledges that B's disclosure did not refer to any such contact; furthermore, the state offers no other theory of corroboration as to those charges. The state therefore concedes that defendant's confession is uncorroborated with respect to the offenses charged in Counts 1 through 11 and that defendant is entitled to an acquittal on those counts. We agree and accept the state's concession.

We turn to whether there was sufficient corroborating evidence with respect to Counts 12 through 16 and Count 18. Counts 12 through 18 arose from the last two incidents described above, which, according to defendant, had occurred in April, and are alleged in the indictment as having occurred on April 15 and April 27, respectively. The first of those incidents (alleged to have occurred on or about April 15) gave rise to charges of one count of first-degree sodomy (Count 12) for defendant having put his penis in B's mouth the first time, a second count of first-degree sodomy (Count 13) for having put his penis in her mouth a second time, and one count of first-degree sexual abuse (Count 14) for having caused B to have sexual contact with his penis. The second incident (alleged to have occurred on or about April 27), resulted in three counts of first-degree sodomy

(Counts 15 through 17), the first two for defendant having placed his penis in B's mouth and the third count for having put his penis back into her mouth after masturbating, as well as one count of first-degree sexual abuse (Count 18), again for having caused B to have sexual contact with his penis.

At issue in this case is whether defendant's confessions regarding the two April incidents were sufficiently corroborated to support defendant's convictions resulting from those incidents. ORS 136.425(2) provides, in part, that "a confession alone is not sufficient to warrant the conviction of the defendant without *some other proof* that the crime has been committed." (Emphasis added.) As the Supreme Court has explained, that statute codifies the common-law "*corpus delicti* rule." *State v. Chatelain*, 347 Or 278, 283, 220 P3d 41 (2009). "The *corpus delicti* rule requires us to determine whether, absent defendant's confession, there was legally sufficient corroborating evidence from which the jury could 'draw an inference that tends to prove' that (1) 'the injury or harm specified in the crime occurred' and (2) that 'this injury or harm was caused by someone's criminal activity.'" *State v. Moreno*, 276 Or App 102, 108, 366 P3d 839, *rev den*, 359 Or 525, *cert den*, 137 S Ct 342 (2016) (quoting *State v. Lerch*, 296 Or 377, 393-94, 677 P2d 678 (1984)). The threshold for corroboration is low; it does not require substantial evidence, clear and convincing evidence, or proof beyond a reasonable doubt. *Moreno*, 276 Or App 102. "The statute only requires that the state introduce independent evidence that *tends* to establish the *corpus delicti*." *Lerch*, 296 Or at 394 (emphasis added); *see also State v. Hernandez*, 256 Or App 363, 367-68, 300 P3d 261, *rev den*, 353 Or 868 (2013) ("To be sure, a jury could conclude that the evidence was insufficient to convict defendant of sexual abuse of S. Nevertheless, in order for that issue to go to the jury, the state was only required to submit enough evidence from which a rational trier of fact could draw an inference that *tends* to show that the charged crimes occurred." (Emphasis in original.)).

Defendant acknowledges that an allegation by a child victim that she has been sexually abused is "'some other evidence' sufficient to corroborate the confession of [a] defendant." *State v. Campbell*, 299 Or 633, 647, 705 P2d

694 (1985) (a "complaint from a three-year-old that a person 'licked her tee-tee' is certainly 'some other evidence'"); *see also State v. Shelton*, 218 Or App 652, 180 P3d 155, *rev den*, 345 Or 318 (2008) (child victim's disclosure that defendant liked it when she grabbed his genital area and that the defendant had touched her vagina, as well as testimony that the victim had been engaging in unusual sexual behavior, corroborated defendant's confession to two counts of first-degree sexual abuse). Defendant contends, however, that, in his case, B's disclosure to Johnson corroborated only a single act of sodomy, specifically Count 17, and not "multiple other acts or an unlimited number of other confessions."[4] To support his argument, defendant emphasizes that B told Johnson that, before school, she had "had to put [her] mouth on daddy's pee-pee." Defendant reasons that, because that disclosure occurred on April 27, the same day that the last incident was alleged to have occurred, it most likely refers only to a single act of sodomy that occurred on that specific date, namely, Count 17. According to defendant, "[n]othing about the victim's statement could reasonably be interpreted to infer that the victim was corroborating multiple acts."

       The state, on the other hand, contends that B's disclosure that she had to put her mouth on defendant's penis corroborated the *corpus delicti* of all the acts of first-degree sodomy and first-degree sexual abuse charged in Counts 12 through 18. Moreover, focusing on the details of B's disclosure, the state contends that B's disclosure *necessarily* referred to more than one incident. That is, the state reasons that B's disclosure about defendant telling her that "mommy does it" was in reference to the April 15 incident, in which defendant confessed to telling B, "it's okay 'cause mommy does it." Similarly, the state contends that B's disclosure about the fact that she "finished it," referenced the

---

[4] Defendant also argues that his statements to Johnson and the text messages that he sent to members of his church acknowledging his guilt are themselves confessions and therefore cannot corroborate his confessions to Gandy. The state, in response, maintains that we "need not determine whether the text messages and statements are sufficient to corroborate defendant's confession because the child victim's disclosure was sufficient." Because the state advances no argument that those other statements corroborate defendant's confessions regarding the April 16 and April 27 incidents, we assume—without necessarily deciding—that they are insufficient for that purpose and only address whether B's disclosure sufficiently corroborates those confessions.

later April 27 incident, in which defendant confessed to telling B, "Okay, baby. I just * * * have to finish and then we can go to school."

We have no difficulty concluding—as defendant concedes—that the state presented legally sufficient evidence from which the jury could draw an inference that tended to prove that at least one act of sodomy occurred. The *corpus delicti* for a first-degree sodomy charge is that a person engaged in "deviate sexual intercourse" with the alleged victim or caused the alleged victim to engage in such acts. *State v. Delp*, 218 Or App 17, 29, 178 P3d 259, *rev den*, 345 Or 317 (2008); ORS 163.405 (2015), *amended by* Or Laws 2017, ch 318, § 5.[5] "'Deviate sexual intercourse' means sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another." ORS 163.305(1) (2015), *amended by* Or Laws 2017, ch 634, § 17. The state presented evidence of the child victim's disclosure that she had had to put her mouth on defendant's "pee-pee." Recognizing the sufficiency of the evidence to prove at least one count of first-degree sodomy, defendant, as noted, does not challenge Count 17, alleging that offense. The question defendant's appeal raises is whether B's disclosure that she had to put her mouth on defendant's "pee-pee" was sufficient to corroborate his confessions to four more counts of sodomy and two corresponding counts of sexual abuse alleged to have occurred over the course of two separate incidents. We conclude that it was.

In short, we are unpersuaded by defendant's argument that *nothing* about B's disclosure could reasonably be interpreted as supporting an inference that she had been subject to oral contact with defendant's penis multiple times. As noted, the threshold for corroboration is low. All that is required is that the state present evidence that permits a reasonable inference that each crime to which

---

[5] Since defendant's indictment, the first-degree sodomy statute has been amended to say, in relevant part, that "[a] person who engages in *oral or anal* sexual intercourse with another person or causes another to engage in *oral or anal* sexual intercourse commits the crime of sodomy in the first degree if: (b) The victim is under 12 years of age[.]" ORS 163.405(1)(b) (emphases added). That change in the statutory definition of sodomy replacing the phrase "deviate sexual intercourse" has no apparent bearing on our case law applying the sodomy statute or the outcome of this case.

defendant confessed did, in fact, occur. *State v. Fry*, 180 Or App 237, 246, 42 P3d 369 (2002). B's statement to Johnson was that she had "had to put [her] mouth on daddy's pee-pee" and that it had happened "before school." While B's disclosure may, in the abstract, be viewed as referring to only a single act, when viewed in the light most favorable to the state, B's statement permits a reasonable inference that it *could* refer to multiple instances. *Cf. Fry*, 180 Or App at 246 (disclosure by child victim that defendant had touched her genitalia with his "thinger" or his "pee-pee" and that it had hurt was insufficient "other proof" to establish more than one instance of penetration, when child had also said that defendant had done so *only once*).

Here, B's disclosure to Johnson did not limit the number of times or occasions on which she had had to put her mouth on defendant's penis. That is, B did not tell Johnson that it had happened once, as opposed to repeatedly, nor did she indicate to Johnson that, by saying that it had happened "before school," she meant that it had only happened before school on the specific day of her disclosure. Thus, although we disagree with the state's contention that B's disclosure on its own *necessarily* referred to multiple instances, we conclude that her disclosure *could* be understood in that manner. To be sure, a jury might reasonably find that evidence insufficient to convict defendant of multiple counts. However, "for that issue to go to the jury, the state was only required to submit enough evidence from which a rational trier of fact could draw an inference that *tend*[ed] to show that the charged crimes [had] occurred." *Hernandez*, 256 Or App at 367-68 (emphasis in original).

The evidence of B's disclosure met that standard. That is particularly true given that parts of B's disclosure appear to correspond to two unique statements that defendant admitted to having made while sexually abusing B and that, according to defendant, he had made on two separate days. Specifically, B told Johnson that, "Daddy said that mommy does it, so I have to do it." That part of B's disclosure could be viewed as referring to defendant's statement, "it's okay 'cause mommy does it," which defendant admitted to having made to B during the first of the two sodomy incidents in April. B also said to Johnson, "So I finished it."

That statement, in turn, arguably relates to the statement defendant admitted to having made during the second sodomy incident, namely, "Okay, baby. I just *** have to finish and then we can go to school." That evidence was sufficient to permit the jury to find that the offense of sodomy had occurred on at least two occasions. Moreover, defendant advances no argument suggesting that, if B's statement is sufficient for that purpose, it is nonetheless insufficient to corroborate defendant's confession to multiple acts of sodomy on each of those occasions. Thus, we conclude that the trial court did not err in denying defendant's motion for judgment of acquittal regarding each of the challenged sodomy counts, Counts 12, 13, 15, and 16.

As for the two corresponding first-degree sexual abuse charges alleged in Counts 14 and 18, the *corpus delicti* for first-degree sexual abuse is that the alleged victim was subjected to sexual contact. *Delp*, 218 Or App at 29; ORS 163.427. Both of the sexual abuse counts in this case were based on allegations that defendant had knowingly subjected B, who was under the age of 14, "to sexual contact by causing [her] to touch defendant's penis."[6] Thus, by engaging in sodomy by having B put her mouth on his penis, defendant necessarily also engaged in conduct constituting sexual abuse. As a result, our conclusion that B's disclosure sufficiently corroborated defendant's confessions to each sodomy count necessarily compels the conclusion that her disclosure also sufficiently corroborated his confessions to his corresponding acts of sexual abuse. Accordingly, the trial court also did not err in denying defendant's motion for judgment of acquittal as to the sexual abuse charges, Counts 14 and 18.

We turn next to defendant's supplemental assignments of error, in which he contends that the trial court erred when it (1) instructed the jury that it could reach nonunanimous verdicts, (2) submitted a jury verdict form that allowed for nonunanimous verdicts, and (3) received nonunanimous verdicts on Counts 3, 5, 6, 7, 8, 10, 13, 16, 17,

---

[6] ORS 163.305(6) provides, "'Sexual contact' means any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

and 18. At trial, defendant requested that the court instruct the jury that it must reach unanimous verdicts, but the trial court denied that request. The jury found defendant guilty on all counts except for Count 11. Of those guilty verdicts, the trial court accepted and entered nonunanimous verdicts on Counts 3, 5, 6, 7, 8, 10, 13, 16, 17, and 18. As to the counts on which the jury returned a unanimous verdict—Counts 1, 2, 4, 9, 12, 14, and 15—defendant's challenge to the nonunanimous jury instruction and verdict form is foreclosed by the Supreme Court's recent decision in *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020) ("[T]he trial court's instruction to the jury that it could return a nonunanimous verdict did not amount to a structural error and was harmless beyond a reasonable doubt."). As to defendant's challenge to the nonunanimous verdicts, the state concedes error and agrees that those convictions must be reversed in light of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). We agree, accept the concession, and reverse and remand the convictions based on nonunanimous verdicts that remain following our disposition regarding defendant's motion for judgment of acquittal, *i.e.*, Counts 13, 16, and 17.

Convictions on Counts 1 through 10 reversed; convictions on Counts 13, 16, and 17 reversed and remanded; remanded for resentencing; otherwise affirmed.